# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

United States of America,

    Plaintiff,

  v.

Williams Four Corners LLC,

    Defendant.

## CONSENT DECREE

WHEREAS, Plaintiff, the United States of America (the "United States"), on behalf of the United States Environmental Protection Agency ("EPA"), has simultaneously with lodging of this Consent Decree filed a Complaint (the "Complaint") alleging that Williams Four Corners LLC ("Four Corners") violated requirements of the Clean Air Act (the "Act") and the federal regulations implementing the Act applicable to the PLA-9 Central Deliver Point, also known as PLA-9 CDP (hereinafter "PLA-9 Facility");

WHEREAS, Four Corners' predecessor in interest, Williams Field Services Company ("Field Services") formerly owned and operated the PLA-9 Facility, and on or about June 20, 2006, Williams Field Services Company, LLC, successor by conversion to Field Services, assigned and conveyed the PLA-9 Facility to Four Corners;



WHEREAS, the PLA-9 Facility is located in the west half of Section 22, Township 32N Range10W in La Plata County, Colorado, approximately 18 miles southwest of Durango, and is situated within the exterior boundaries of the Southern Ute Indian Reservation ("Reservation");

WHEREAS, EPA administers the Act's Prevention of Significant Deterioration ("PSD") program set forth at Part C of the Act, 42 U.S.C. §§ 7470 et seq. for the area within the exterior boundaries of the Reservation , and also administered the Act's Title V Operating Permits Program ("Title V Program") until March 15, 2012 when EPA approved the Southern Ute Indian Tribe (the "Tribe") administering a tribal Title V Program for issuing operating permits to sources located on the Reservation as set forth at 77 Fed. Reg. 15267 (March 15, 2012);

WHEREAS, the PLA-9 Facility functioned as a central delivery point for field natural gas to be dehydrated and compressed for delivery to transmission sales pipelines, and consisted of up to fourteen natural gas powered internal combustion engines ("ICEs") used to power natural gas compressors and a  generator, up to seven triethylene glycol dehydration units ("TEG Dehydrators"), and numerous storage tanks and ancillary equipment, most of which equipment was installed at the PLA-9 Facility between 1991 and 1995;

WHEREAS, in June 2002, EPA determined that the PLA-9 Facility had the potential to emit nitrogen oxides, carbon monoxide, and volatile organic compounds above PSD major source thresholds and that applicable requirements of the PSD program had been triggered by a series of modifications of the PLA-9 Facility, and EPA issued an administrative Compliance Order directing Field Services to comply with the PSD program;

WHEREAS, on September 13, 2002, Field Services submitted an application for a PSD permit to EPA, and in December 2006, EPA issued Permit # PSD-SU-0003.02.00 (the "PSD



Permit") to Field Services for the PLA-9 Facility and the thirteen ICEs, the Caterpillar generator, and the seven TEG Dehydrators and ancillary tanks and equipment listed in Field Services' PSD permit application as equipping the facility;

WHEREAS, on April 26, 2007, Four Corners requested EPA cancel the PSD Permit on the basis that several of the emission units covered by the PSD Permit had been removed or taken out of service, and the PLA-9 Facility was no longer a "major source" of pollutants;

WHEREAS, EPA never cancelled the PSD permit;

WHEREAS, on April 27, 2003, EPA issued a Title V operating permit, Permit # V-SU-0014-00.00 (the "Title V Permit") to Field Services covering the same ICEs and the generator described in the PSD Permit, and the six TEG Dehydrators remaining on the site were also included in the Title V Permit and listed as "insignificant sources" for purposes of the Title V Permit;

WHEREAS, on April 26, 2007, Four Corners requested EPA cancel the Title V Permit because after the issuance of the Title V Permit emission units described in the Title V Permit had been permanently removed from the PLA -9 Facility, no additional emission units had been added to the facility, and the potential to emit for the emission units remaining at the facility since November 2005 was such that the facility no longer met the definition of "major source" in 40 C.F.R. §71.2;

WHEREAS, the Title V Permit was effective from April 7, 2003 through April 7, 2008 when it expired because neither Four Corners, nor its predecessor Field Services, filed an application to renew the Title V Permit prior to its expiration;



WHEREAS, the Complaint alleges that Four Corners failed to comply with certain requirements of the PSD Permit and operated the PLA-9 Facility without a Title V operating permit after April 7, 2008;

WHEREAS, Four Corners represents that the PLA-9 Facility was completely decommissioned and shut down in April 2012, that all connections to what limited equipment remained at the location at that time were disconnected and flanged off, and there are no current plans to restart the PLA-9 Facility;

WHEREAS, Four Corners does not admit the violations referenced in the Complaint occurred and further does not admit any liability for civil penalties or injunctive relief to the United States arising out of the transactions or occurrences alleged in the Complaint;

WHEREAS, the United States and Defendant (the "Parties") recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and at arm's length, will avoid litigation among the Parties, and that this Consent Decree is fair, reasonable, consistent with the goals of the Act, and that its entry is in the best interest of the Parties and is in the public interest;

NOW THEREFORE, without the admission of fact or law, and without the admission of the violations alleged in the Complaint, it is hereby ORDERED AND DECREED as follows:

## I. **JURISDICTION AND VENUE**

1.      This Court has jurisdiction over the subject matter of this action and the Parties pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 113(b) and 167 of the Act, 42 U.S.C. §§ 7413(b) and 7477.  Venue lies in this District pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) & (c) and 1395(a), because the violations alleged in



the Complaint are alleged to have occurred in, and Defendant conducts business in, this judicial district. For purposes of this Consent Decree, or any action to enforce this Consent Decree, Defendant consents to and will not contest the jurisdiction of the Court over this matter.

2.   For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Sections 113 and 167 of the Act, 42 U.S.C. §§ 7413 and 7477.

## II. **APPLICABILITY**

3.   The obligations of this Consent Decree apply to and are binding upon the United States and upon the Defendant and any of its successors, assigns, or other entities or persons otherwise bound by law.

## III. **DEFINITIONS**

4.   Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

      a.   "Consent Decree" or "Decree" shall mean this Consent Decree.

      b.   "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

      c.   "Defendant" shall mean Four Corners.

      d.   "Effective Date" shall have the meaning as specified in Section XV.



e.    "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

f.    "Four Corners" shall mean Williams Four Corners LLC, a limited liability company organized under the laws of the State of Delaware.

g.    "Paragraph" shall mean a portion of this Decree identified by an arabic numeral.

h.    "Parties" shall mean the United States and Defendant.

i.    "PLA-9" shall mean all equipment and piping located at, or previously located at, the facility in the west half of Section 22, Township 32N Range10W in La Plata County, Colorado, approximately 18 miles southwest of Durango, that is situated within the exterior boundaries of the Southern Ute Indian Reservation and known (or formerly known) as PLA-9 Central Deliver Point and PLA-9 CDP.  PLA-9 was described in Field Services' September 13, 2002 application for a PSD Permit, the PSD Permit, Field Services' March 10, 2000 application for a Title V operating permit, and the Title V Permit.

j.    "Plaintiff" shall mean the United States.

k.    "PSD Permit" shall mean Permit # PSD-SU-0003.02.00 issued by EPA to for PLA-9.

l.    "Section" shall mean a portion of this Decree identified by a Roman numeral.

m.    "Title V Permit" shall mean Title V operating permit, Permit # V-SU-0014-00.00 (the "Title V Permit") issued by EPA for the PLA-9 Facility.

n.    "Tribe" shall mean the Southern Ute Indian Tribe.



## IV. <u>INJUNCTIVE REQUIREMENTS</u>

5.      Beginning upon the Effective Date of this Consent Decree, and continuing for a period of two years after the Effective Date, Four Corners shall not resume any operations at the PLA-9 Facility, or restart any equipment at the PLA-9 Facility listed in the PSD Permit having potential air emissions, without first providing EPA and the Tribe at least 30 Days advance written notice of what equipment Four Corners intends to start or restart, and describing the expected operations at the PLA-9 Facility once the equipment is started or restarted. Notice shall be provided in accordance with Paragraph 45. In addition, for the two year period following the Effective Date, Four Corners shall submit an annual report to EPA disclosing all operations and emissions at the PLA-9 Facility during the prior twelve month period in accordance with Section VI of this Consent Decree. If no operations and emissions occur within the prior twelve month period, Four Corners shall submit a report so stating. During the two-year period following the Effective Date, compliance with the reporting requirements of this Consent Decree shall constitute compliance with the PSD reporting requirements whenever the PLA – 9 Facility is non-operational.

6.      The provisions of this Paragraph 6 shall apply if, within the two year period after the Effective Date, Four Corners resumes any operations at the PLA-9 Facility that involves restarting any equipment listed in the PSD Permit and/or starting any equipment that replaced such equipment.



a.      Upon resuming such operations Four Corners shall immediately comply with all applicable requirements in Section III C-E, Section III F (for Emission Units Id. 1 – 15), Section III G-I, and Section IV B-G of the PSD Permit for the replaced or restarted equipment.

b.      If upon resuming such operations the potential to emit a regulated pollutant at the PLA-9 Facility will be greater than PSD major source levels, then the PSD Permit provisions specified in Paragraph 6.a. above shall remain in effect for the restarted or replaced equipment, unless a new PSD permit or a Title V permit is issued for the PLA-9 Facility after the end of the two-year period following the Effective Date that incorporates those requirements listed in Paragraph 6.a. above as determined by EPA for all of the restarted or replaced equipment.

c.      If upon resuming such operations the potential to emit a regulated pollutant at the PLA-9 Facility will be less than PSD major source levels, then within 30 Days of resuming operations Four Corners shall apply to EPA for a minor source New Source Review ("NSR") permit incorporating the provisions  of the PSD Permit specified in Paragraph 6.a. above applicable to the equipment that was restarted or replaced.  Upon issuance of a minor source NSR permit containing those provisions of the PSD Permit applicable to the equipment that was restarted or replaced, the PSD Permit shall no longer have any further effect.

7.      The provisions of this Paragraph 7 shall apply if, within the two year period after the Effective Date, Four Corners does not resume any operations at the PLA-9 Facility that involves restarting any equipment listed in the PSD permit and/or restarting any equipment that replaced such equipment.  Upon the date Four Corners submits to EPA and the Tribe the last report due pursuant to Paragraph 5 of this Decree, the PSD Permit shall no longer have any



further effect, and Four Corners shall thereafter be subject to all existing major PSD, minor NSR, and Title V permit requirements that apply to those operations at that time, and within the time periods specified in the applicable regulations.

### V. **CIVIL PENALTY**

8.     Not later than thirty days after the effective date of this Consent Decree, Defendant shall pay to the United States a civil penalty pursuant to Section 113 of the Act, 42 U.S.C. 7413, in the amount of $63,000.00 (the "Civil Penalty") by Electronic Funds Transfer ("EFT") to the United States Department of Justice, in accordance with current EFT procedures, referencing U.S.A.O. File Number 2013V00126 and DOJ case number 90-5-2-1-10120. Payment shall be made in accordance with instructions provided by the U.S. Attorneys Office in the District of Colorado. The costs of such EFT shall be paid by the Defendant. Any funds received after 11:00 a.m. (Eastern Time) shall be credited on the next business day. The Defendant shall provide notice of payment, referencing the U.S.A.O. File Number 2010C00586 and DOJ Case Number 90-5-2-1-10120 and the civil action case name and number, to the United States and to EPA.

9.     Upon entry, this Decree shall constitute an enforceable judgment for purposes of post-judgment collection in accordance with Rule 69 of the Federal Rules of Civil Procedure, the Federal Debt Collection Procedure Act, 28 U.S.C. §§ 3001-3308, and other applicable federal authority. The United States shall be deemed a judgment creditor for purposes of any unpaid amounts of the civil penalty and any stipulated penalties and interest.

No amount of the Civil Penalty shall be used to reduce the Defendant's federal or state tax obligations.

- 9 -



## VI.  REPORTING REQUIREMENTS

10.     All reports required to be submitted pursuant to this Consent Decree shall be

submitted to the persons designated in Section XIII (Notices) of this Consent Decree.

11.     The first annual report shall be due  the twelve months after the Effective Date of

this Decree. Each annual report shall be submitted within 20 Days after the conclusion of each

twelve month period.

12.     Each report submitted by Defendant shall be signed by an authorized official and

include the following certification:

> I certify under penalty of law that this document and all
> attachments were prepared under my direction or supervision in
> accordance with a system designed to assure that qualified
> personnel properly gather and evaluate the information submitted.
> Based on my inquiry of the person or persons who manage the
> system, or those persons directly responsible for gathering the
> information, the information submitted is, to the best of my
> knowledge and belief, true, accurate, and complete.

13.     The reporting requirements of this Consent Decree do not relieve Defendant of

any reporting obligations required by the Act or its implementing regulations or by any other

federal, state, or local law, regulation, permit, or other requirement.

14.     Any information provided pursuant to this Consent Decree may be used by the

United States in any proceeding to enforce the provisions of this Consent Decree and as

otherwise permitted by law.

## VII.  STIPULATED PENALTIES

15.     Defendant shall be liable for stipulated penalties to the United States for

violations of this Consent Decree as specified below, unless excused under Section VIII (Force

Majeure).  A violation includes failing to perform any obligation required by the terms of this



Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

| Violation | Stipulated Penalty |
|---|---|
| For failure to provide notice or a report as required by Paragraph 5, or to certify a report as required by Paragraph 12. | $250 per day for the first 30 days of noncompliance, $500 per day from the 31st to 60th day of noncompliance, and $1,000 per day thereafter. |
| For failure to comply, as required by Paragraph 6, with the requirements of the PSD Permit or apply for a permit. | $1,000 per day for the first 30 days of noncompliance, $2,500 per day from the 31st to 60th day of noncompliance, and $5,000 per day thereafter. |
| For failure to pay the Civil Penalty when due as required by Paragraph 8. | $1,000 per day for each day the payment is late. |

16.     Stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

17.     Defendant shall pay any stipulated penalty within thirty days of receipt of written demand of the United States and shall continue to make such payments every thirty days thereafter until the violation(s) no longer continues, unless Defendant elects within twenty days of receipt of written demand from the United States to dispute the accrual of stipulated penalties in accordance with the provisions in Section IX (Dispute Resolution) of this Consent Decree.

18.     Defendant shall pay stipulated penalties in accordance with the payment instructions set forth in Paragraph 8.

- 11 -



19.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due under this Consent Decree.

20.     Stipulated penalties shall continue to accrue as provided in Paragraph 32.e. during any dispute, with interest on accrued stipulated penalties payable and calculated by the Secretary of Treasury, pursuant to 28 U.S.C. § 1961, but need not be paid until the following:

a.      If the dispute is resolved by agreement or by a decision of Plaintiff pursuant to Section IX (Dispute Resolution) of this Consent Decree that is not appealed to the Court, Defendant shall pay accrued stipulated penalties agreed or determined to be owing, together with accrued interest, within 30 days of the effective date of the agreement or the receipt of Plaintiff's decision.

b.      If the dispute is appealed to the Court, and the Plaintiff prevails in whole or in part, Defendant shall pay all accrued stipulated penalties determined by the Court to be owing, together with accrued interest, within 60 days of receiving the Court's decision or order, except as provided in Subparagraph c., below.

c.      If any Party appeals the Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with accrued interest, within 30 days of receiving the final appellate court decision.

21.     Defendant shall not deduct stipulated penalties paid under this Section VII in calculating its federal income tax.

22.     Subject to the provisions of Section XI (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of

this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a

violation of the Act or regulatory requirements of the Act, Defendant shall be allowed a credit,

for any stipulated penalties paid, against any statutory penalties imposed for such violation.

### VIII.  FORCE MAJEURE

23.     If any event occurs which causes or may cause a delay or impediment to

performance in complying with any provision of this Consent Decree, and which Defendant

believes qualifies as an event of Force Majeure, Defendant shall notify the United States in

writing as soon as practicable, but in any event within 30 days of when Defendant first knew of

the event or should have known of the event by the exercise of due diligence.  In this notice

Defendant shall specifically reference this Paragraph of this Consent Decree and describe the

anticipated length of time the delay may persist, the cause or causes of the delay, and the

measures taken or to be taken by Defendant to prevent or minimize the delay and the schedule by

which those measures will be implemented.  Defendant shall adopt all reasonable measures to

avoid or minimize such delays.

24.     Failure by Defendant to substantially comply with the notice requirements of

Paragraph 23, as specified above, shall render this Section voidable by the United States, as to

the specific event for which Defendant has failed to comply with such notice requirement.  If so

voided, it shall be of no effect as to the particular event involved.

25.     The United States shall notify Defendant in writing regarding its claim of a delay

or impediment to performance within 45 days of receipt of the Force Majeure notice provided

under Paragraph 23.

- 13 -



26.     If the United States agrees that the delay or impediment to performance has been or will be caused by circumstances beyond the control of Defendant, including any entity controlled or contracted by it, and that Defendant could not have prevented the delay by the exercise of due diligence, the Parties shall stipulate to an extension of the required deadline(s) for all requirement(s) affected by the delay by a period equivalent to the delay actually caused by such circumstances, or such other period as may be appropriate in light of the circumstances. Such stipulation may be filed as a modification to this Consent Decree by agreement of the parties pursuant to the modification procedures established in this Consent Decree.  Defendant shall not be liable for stipulated penalties for the period of any such delay.

27.     If the United States does not agree that the delay or impediment to performance has been or will be caused by circumstances beyond the control of Defendant, including any entity controlled or contracted by Defendant, the position of the United States on the Force Majeure claim shall become final and binding upon Defendant, and Defendant shall pay applicable stipulated penalties, unless Defendant submits the matter to this Court for resolution by filing a petition for determination with this Court within ten business days after receiving the written notification of the United States as set forth in Paragraph  25.  Once Defendant has submitted such matter to this Court, the United States shall have twenty business days to file a response to the petition.  If Defendant submits the matter to this Court for resolution and the Court determines that the delay or impediment to performance has been or will be caused by circumstances beyond the control of Defendant, including any entity controlled or contracted by Defendant, and that Defendant could not have prevented the delay by the exercise of due diligence, Defendant shall be excused as to that event(s) and delay (including stipulated

- 14 -



penalties) for all requirements affected by the delay for a period of time equivalent to the delay caused by such circumstances or such other period as may be determined by the Court.

28.     Defendant shall bear the burden of proving that any delay of any requirement(s) of this Consent Decree was caused by or will be caused by circumstances beyond its control, including any entity controlled or contracted by Defendant, and that Defendant could not have prevented the delay by the exercise of due diligence.  Defendant shall also bear the burden of proving the duration and extent of any delay(s) attributable to such circumstances.  An extension of one compliance date based on a particular event may, but does not necessarily, result in an extension of a subsequent compliance date or dates.  Unanticipated or increased costs or expenses associated with the performance of obligations under this Consent Decree shall not constitute circumstances beyond the control of Defendant.

29.     As part of the resolution of any matter submitted to this Court under this Section, the Parties by agreement, or this Court by order, may in appropriate circumstances extend or modify the schedule for completion of work under this Consent Decree to account for the delay in the work that occurred as a result of any delay or impediment to performance agreed to by the United States or approved by this Court.  Defendant shall be liable for stipulated penalties for its failure thereafter to complete the work in accordance with the extended or modified schedule, except to the extent that such schedule is further modified, extended or otherwise affected by a subsequent Force Majeure event under this Section VIII.



## IX.  **DISPUTE RESOLUTION**

30.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.

31.     <u>Informal Dispute Resolution</u>.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute. The Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed twenty days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within twenty days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

32.     <u>Formal Dispute Resolution</u>.  Defendant may only invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

        a.     The United States shall serve its Statement of Position within thirty days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but may not necessarily be limited to, any factual data, analysis, or opinion supporting

- 16 -



that position and any supporting documentation relied upon by the United States.  During  the

fourteen-day period after Defendant's receipt of the United States'  Statement of Position, the

United States and Defendant shall, in good faith, enter into discussions in an attempt to resolve

the dispute.  If the dispute is not resolved during this time, the United States' Statement of

Position shall become binding upon Defendant unless Defendant files a motion for judicial

review of the dispute in accordance with the following subparagraph (b).

        b.      Defendant may seek judicial review of the dispute by filing with the Court

and serving on the United States, in accordance with Section XIII of this Consent Decree

(Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed

within 30 days of receipt of the United States' Statement of Position pursuant to the preceding

Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in

dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set

forth the relief requested and any schedule within which the dispute must be resolved for orderly

implementation of the Consent Decree.

        c.      The United States shall respond to Defendant's motion within the time

period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum to the

extent permitted by the Local Rules.

        d.      Except as otherwise provided in this Consent Decree, in any dispute

brought under this Section IX (Dispute Resolution), Defendant shall bear the burden of

demonstrating that its position complies with this Consent Decree.

        e.      The invocation of dispute resolution procedures under this Section shall

not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this



Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute. If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X. INFORMATION COLLECTION AND RETENTION

33.     The United States, and its representatives, including attorneys, contractors, and consultants, and representatives of the Tribe, shall have the right of entry into the PLA-9 Facility at all reasonable times, upon presentation of credentials, for the purpose of monitoring compliance with any the provisions of this Consent Decree, including to:

      a.     monitor the progress of activities required under this Consent Decree;

      b.     inspect equipment and facilities covered by this Consent Decree; and

      c.     inspect and copy documents, records, or other information to be maintained in accordance with the terms of this Consent Decree.

34.     Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United



States, Defendant shall provide copies of any non-privileged documents, records, or other information required to be maintained under this Paragraph.

35.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least ninety days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver the requested non-privileged documents, records, or other information to EPA.

36.     Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant.  However, no documents, records, or other information that Defendant is explicitly required to create or generate to satisfy a specific requirement of this Consent Decree shall be withheld on the grounds of privilege.

37.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

38.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal or



state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

39.     This Consent Decree resolves all civil or administrative claims of the United States for violations alleged in the Complaint through the date of lodging of this Consent Decree.

40.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions.

41.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Nothing in this Consent Decree shall relieve Defendant of its obligation to achieve and maintain complete compliance with all applicable federal, State, and local laws, regulations, and permits except as provided in Paragraphs 5, 6 and 7 of this Decree.  Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits.  The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, or with any other provisions of federal, State, or local laws, regulations, or permits.



42.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

43.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII. COSTS

44.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties when due.

## XIII. NOTICES

45.     Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and mailed or hand delivered addressed as follows:

As to the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C.  20044-7611
Re:  DOJ No. 90-5-2-1-10120

- 21 -



As to EPA:

Assistant Regional Administrator
Office of Enforcement, Compliance, and Environmental Justice
U.S. Environmental Protection Agency, Region 8
1595 Wynkoop Street
Denver, CO 80202-1129

As to the Tribe:

Thomas Johnson
Environmental Program Division Head
Southern Ute Indian Tribe
398 Ouray Drive
Ignacio, CO  81137

As to Defendant:

Williams Four Corners LLC
188 CR 4900
Bloomfield, NM 87413
Attention: Vice President and General Manager

46.     Any Party may, by written notice to the other Party, change its designated notice

recipient or notice address provided above.

47.     Notices submitted pursuant to this Section XIII shall be deemed submitted upon

mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties

in writing.

## XIV. SALES OR TRANSFERS OF OWNERSHIP/OPERATOR INTERESTS

48.     If Defendant proposes to sell or transfer all or part of its ownership or its

responsibility as operator of the PLA-9 Facility, Defendant shall advise the buyer or transferee in

writing of the existence of this Consent Decree prior to such sale or transfer and shall send a

copy of such written notification to the Plaintiff pursuant to Section XIII (Notices) of this

Consent Decree at least sixty days before such proposed sale or transfer; provided, however, that



if Defendant has completed the obligations required under Section IV (Injunctive Requirements) of this Consent Decree Defendant need not advise buyer or transferee of the existence of this Consent Decree.

49.     Unless Defendant has completed all the obligations required under Section IV (Injunctive Requirements) of this Consent Decree, no sale or transfer of ownership to a buyer or transferee shall take place before the buyer or transferee consents in writing, by a stipulation to be filed with the Court, to:  (a) accept all of the obligations, terms, and conditions of this Consent Decree with the exception of the obligations, terms, and conditions contained in Section V (Civil Penalty); (b) accept the jurisdiction of the Court to enforce the terms of this Consent Decree (with the exception of Section V (Civil Penalty); and (c) becomes a party to this Consent Decree (consistent with the limitations set forth in (a) and (b), above).  Notwithstanding such a sale or transfer, Defendant shall remain jointly and severally liable with the buyer or transferee unless the Consent Decree is modified or Defendant's joint and several liability is restricted in accordance with Paragraph 50.

50.     If the United States agrees, the Parties and the buyer or transferee may execute a modification to this Consent Decree, which relieves Defendant of its liability under this Consent Decree for, and makes the buyer or transferee liable for, all obligations and liabilities applicable to the purchased or transferred facilities or operator responsibility.  Notwithstanding the foregoing, however, Defendant may not assign, and may not be released from, obligations under this Consent Decree to pay the civil penalty in accordance with Section V (Civil Penalties), pay stipulated penalties with respect to actions occurring prior to the date of transfer of ownership or operator responsibility in accordance with Section VII (Stipulated Penalties), or maintain

- 23 -



documents or provide reports with respect to those obligations in accordance with Sections VI (Reporting Requirements) and X (Information Collection and Retention). Defendant may propose, and the United States may agree, to restrict the scope of the joint and several liability of any purchaser or transferee for any obligations of this Consent Decree that are not specific to the transferred or purchased facilities or operator responsibility, to the extent such obligations may be adequately separated in an enforceable manner.

## XV. **EFFECTIVE DATE**

51.     Unless otherwise specifically provided herein, the effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court.

## XVI. **RETENTION OF JURISDICTION**

52.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree pursuant to Section IX (Dispute Resolution) or entering orders modifying this Decree, pursuant to Sections XIV (Sales or Transfers of Ownership/Operator Interests) and XVII (Modification), or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVII. **MODIFICATION**

53.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties. With respect to any modification that constitutes a material change to this Decree, such written agreement shall be filed with the Court and effective only upon the Court's approval. Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX (Dispute Resolution) of this Consent Decree.



## XVIII. **TERMINATION**

54.     This Consent Decree shall be in effect until it is terminated in accordance with the provisions of this Section.

55.     Defendant shall serve upon the United States a Request for Termination.  The Request for Termination shall certify that Defendant has fulfilled all obligations of this Consent Decree.

56.     If the United States does not agree that the Consent Decree may be terminated, Defendant may invoke Dispute Resolution under Section IX (Dispute Resolution) of this Consent Decree.

57.     If the United States agrees that the Consent Decree may be terminated, the Parties shall jointly move the Court for termination of the Consent Decree.  If, by the 60th day after receipt of the Termination Request, the United States does not respond in writing (including electronic mail message) to the Defendant by agreeing with the Defendant or stating why the United States believes  the Decree should not be terminated, the Defendant may move the Court to terminate the Decree.

## XIX. **PUBLIC PARTICIPATION**

58.     This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to

- 25 -



challenge any provision of the Consent Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Consent Decree.

## XX. **SIGNATORIES/SERVICE**

59.     The undersigned representative of Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certify that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to the terms and conditions of this document.

60.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

61.     Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI. **INTEGRATION**

62.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding between the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than the deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXII.  **FINAL JUDGMENT**

63.     Upon approval and entry of this Consent Decree by the Court, this Consent

Decree shall constitute a final judgment of the Court as to the United States and Defendant.

Dated and entered this _____ day of _____, 2013

_____
UNITED STATES DISTRICT JUDGE
District of Colorado

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. Williams Four Corners LLC*, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR WILLIAMS FOUR CORNERS LLC

_____                Date:  6/26/2013

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. Williams Four Corners LLC*, subject to the public notice and comment requirements of 28 C.F.R. § 50.7.

FOR PLAINTIFF, UNITED STATES OF AMERICA

Date_____

NATHANIEL DOUGLAS
Deputy Section Chief
Environmental Enforcement Section
Environment & Natural Resources  Division
United States Department of Justice

Date 7/10/2013

JEREL ("JERRY") L. ELLINGTON
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
1961 Stout Street – 8th Floor
Denver, CO  80294
Telephone (303) 844-1363

- 28 -

FOR UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, REGION 8

Date: JUL 1 6 2013

ANDREW M. GAYDOSH
Assistant Regional Administrator
Office of Enforcement, Compliance and
  Environmental Justice